TURNER CREAMERY COMPANY, Respondent, v. CHICAGO, MILWAUKEE & ST. P. RY. CO., Appellant.

(154 N. W. 819.)

(File No. 3725.    Opinion filed November 16, 1915.)

1.  Carriers—Freight Reduction—Reparation for Excess Charges—Reasonableness of Rate—Rule of Evidence—Comparison of Rates—Statute.

In a proceeding before the state board of railway commissioners for lowering of freight rates, and for reparation for past shipments, held, that Laws 1911, Ch. 207, Sec. 22, placing burden of proof upon the carrier, and permitting the complainant to introduce in evidence published schedules of rates charged by any carrier for substantially the same kind of service, and of the lowest rates published or charged by any railroad for substantially similar service, which evidence shall be prima facie evidence of reasonableness of rates, authorizes ascertainment of reasonableness of rates by comparison.

2.  Carriers—Reasonableness of Rates—Similarity of Service—Tariff Rate and Express Rate, Compared—Difference in Liability of Carrier.

Evidence that a railroad's tariff freight rates are lower than express company rates prescribed by the state railway commission, and lower than the railroad excess baggage rates based on passenger fares, does not establish reasonableness of such freight rates, under Laws 1911, Ch. 207, Sec. 22, prescribing rules for ascertaining such reasonableness by similarity of service, although it appeared that complainant's shipments were carried in baggage cars on passenger trains; nor was the liability of the carrier for loss or damage the same, inasmuch as under the railroad tariff shipper must deliver freight for shipment on the railway platform, and the

tariff recites that while there goods are at owner's risk.

3. **Carriers—Reasonableness of Rates—Through Rate Exceeding Sum of Locals.**

A through rate for carriage of freight that exceeds the combination of the locals is not a reasonable rate. So held, as to carriage of milk from points west to a point east of the Missouri river in South Dakota.

4. **Carriers—Reasonableness of Rates—Comparative Rates—Long-and-Short Haul—Higher Rate for Short Haul.**

Even if a through freight rate from points west of the Missouri river within to a point outside of this state was reasonable, held, that, in absence of a showing to contrary, a rate from said interior point to another point east of the river in the state which is higher than said through rate, the carriage being part way over the same line and presumably on the same train as the carriage to the outside point, is unreasonable, where the through distance is 528 miles and that between the two interior points is but 361 miles.

5. **Carriers—Reasonable Freight Rates—Evidence, Sufficiency of—Railroad's Tariff Versus Interstate Commerce—Schedules.**

In a proceeding before the state railway commission for lowering of freight rates for carriage of milk between certain points west of the Missouri river in this state, to a point therein east of the river, evidence held insufficient to sustain burden of proof on defendant railroad to show its rates reasonable under its tariff schedule; that said rate was unreasonable, unjust, and excessive. Held, further, that the evidence proves the reasonableness of the schedule of rates relied on by complainant, being rates promulgated by defendant railroad's main line and applying on interstate traffic between stations on its line and on intrastate traffic between stations in this state, which rates were established by the interstate commerce commission.

6. **Carriers—Excessive Charges—Measure of Damages on Reparation.**

Where freight carriage charges are found to be unreasonable, unjust, and excessive, the amount of reparation to which complaining shipper is entitled, is the excess paid above a reasonable charge, and not the difference between the excessive charge and the sum of the locals. So held, on shipments between points west and a point east of the Missouri river in this state.

7. **Carriers—Excessive Charges—Reparation—Necessity of Proving Damages—Evidence of Damages.**

While a shipper is not entitled to reparation for excess freightage paid on shipments, until he has shown damage, yet, held, that, where complainant proved that it established for-

warding stations at certain initial shipping points, upon the strength of rates then charged, that it paid for the cream shipped therefrom, at the stations, paid shipping charges at the rates then charged, that when the higher tariff complained of was applied it paid those rates, and that by reason thereof it paid defendant railroad a specified sum of money more than it would have paid if the tariff which it successfully contended applied had been applied, it made out a prima facie case of damages. So held, against the objections that complainant did not show it paid more for cream including carriage, under the tariff objected to, than it paid for cream originating at other points, nor that it was embarrassed in its business by reason of that tariff, nor that it was unable to procure all the cream it required at regular prices paid by it in market.

8.  **Carriers—State Railway Commission, Jurisdiction of—Power to Order Reparation to Shipper—Statute.**

Under Laws 1911, Ch. 207, authorizing proceedings before state board of railway commission by a complaining shipper to determine the reasonableness or otherwise of freight rates, and for reparation of excess charges paid, and empowering the board to make an order requiring reparation "for injury found to have been done," held, that defendant railroad company's objection that the board is without jurisdiction, because the board found, and the trial court on appeal therefrom approved a finding, to the effect that the tariff complained of was inapplicable because there could be no joint rate between defendant and itself, is untenable; that said board had jurisdiction to make such order.

9.  **Carriers—Excessive Freight Rates—Reparation to Shipper—Power of Railway Commission to Award Reparation—Remedy at Law.**

Under Laws 1911, Ch. 207, Sec. 13, providing that a person claiming to be damaged by a common carrier for excessive freight charges paid may either make complaint to the board of railway commissioners, or bring suit for recovery of damages, but—may not pursue both remedies at the same time, and under succeeding sections defining the procedure and powers of the board, held, that the statute grants the power to make an order awarding reparation to shipper of excess charges paid; and, the mere fact that the board has no power to enforce its orders cannot be successfully urged as a denial of power to make the order; and the objection that plaintiff shipper has an adequate remedy at law, as against the procedure before said board, is not tenable.

10.  **Carriers—Reparation for Excess Charges—Constitutional Law—**

Enforcement of Reparation Order—Nature of the Order—Due Process of Law—Statute.

Laws 1913, Ch. 312, Sec. 8, making the order of the board of railway commissioners for reparation for excess charges paid for freight shipments absolute, unless appealed from to the circuit court, is not violative of U. S. Const., Amendment 14, and State Const., Art. 6, Sec. 2, prohibiting deprivation of property without due process of law; since such order is not thereby made absolute unless appealed from, in the sense that it is a final money judgment, but only in the sense that it is absolute on final affirmance after all methods for its review have been exhausted or time therefor has elapsed.

11.   Trial—Trial by Jury—Appeal From Railway Commission Reparation Order—Trial on Appeal—Failure to Object to Court Trial, Effect—Statute.

Where a railroad company, defendant in a proceeding for determination of reasonableness of freight rates and for reparation for excess charges paid, failed to object to a trial to the court without a jury, on appeal from an order of the board of railway commissioners, but acquiesced in such court trial, it cannot raise the constitutional question of whether Laws 1913, Ch. 312, Sec. 8, making absolute such order unless appealed from, violates Const., Art. 6, Sec. 6, making inviolate the right of trial by jury; this in view of Civ. Code, Sec. 2415, depriving one who acquiesces in error of the right to object to the error.

12.   Constitutional Law—Due Process of Law—Freight Rates— Order of Railway Board—Trial on Appeal—Limitation of Evidence to Board Proceedings.

The fact that, upon appeal from an order of the board of railway commissioners in a proceeding to determine reasonableness of freight charges and for reparation for excess freight paid, the trial must be had solely upon the record made before said board, does not render such proceeding obnoxious to the objection that it deprives of property without due process of law within U. S. Const., Amend. 14, and State Const., Art. 6, Sec. 6; since it is right and proper that the parties should make full presentation of their case before the board in the first instance; and because also Laws 1913, Ch. 312, Sec. 7, confers upon circuit court on such appeal the power of affirming, reversing, or modifying the order appealed from, and to substitute therefor its own order, or to remand the cause to said board with directions to make such order; and thereby ample provision is made for correction of any errors occurring in preceding stages of the case.

13.   Constitutional Law—Due Process of Law—Trial by Jury—Right to Jury Trial on Appeal, Effect of—New Statute.

In a proceeding before the board of railway commissioners to determine reasonableness of freight charges and for reparation for excess charges paid, held, that, under Laws 1911, Ch. 207, Sec. 17, the order of the board for reparation is not a judgment for payment of money, and it is only prima facie evidence as to the facts found; and if the carrier disobeys the order, it is enforceable by action in circuit court; and, since the denial of the right to a jury trial cannot be successfully asserted if upon appeal a jury trial may be had, and while, under said section, no provision is made for a jury trial on appeal, yet if in some stage of the proceeding such right is given the carrier, as in case of an action to enforce such order, the right of jury trial is thereby provided in compliance with Const., Art. 6, Sec. 6. Held, further, that, while under Laws 1911, Ch. 207, Sec. 19, orders of said board are to be enforced by action in court without a jury, whether the order requires payment of money or otherwise; and that statute was in force when the proceedings below were had, yet, under Laws 1915, said section 19 was amended by providing for a jury trial where such order requires payment of money; and if upon filing of remittitur herein the appellant carrier refuses to obey the order appealed from, it may then have its trial by jury; and its constitutional right has therefore been preserved.

Appeal from Circuit Court, Brown County. Hon. THOMAS L. BOUCK, Judge.

Action by the Turner Creamery Company, against the Chicago, Milwaukee & St. Paul Railway Company, to determine the reasonableness or otherwise of freight tariffs and charges, and for reparation for excess charges paid for carriage of cream and milk. From a judgment for plaintiff, and from an order denying a new trial, defendant appeals. Affirmed.

*William G. Porter,* and *Ed L. Grantham,* for Appellant.

*Herbert E. Hitchcock,* for Respondent.

*P. W. Dougherty,* and *Oliver E. Sweet,* for Board of Railroad Commissioners.

(2) Under point two of the opinion, Appellant submitted that: In view of the fact that the express rate on a ten gallon can of cream from Timber Lake to Mitchell has been fixed by the Board of Railroad Commissioners at 80 cents, and the approved excess baggage rate on an article of the same weight is $1.00, and the rate named in 141-A is only 64 cents, we think

that the last named rate is shown by comparison to be reasonable.

Respondent, and Board of Railway Commissioners, submitted that: The carrying of excess baggage is regarded by the carriers rather in the light of an additional passenger service. The railroad company's effort to show that express rates, per hundred pounds, from the towns on the Isabel and Faith lines west of Mobridge to Mitchell exceed the freight rates charged on milk and cream between the same points, has not been shown to be a proper comparison. The evidence shows that express service differs materially from freight service, and that the former contemplates in most instances what is known as a free pick-up service at the point at which the express shipment originates, and a free delivery service at the point at which the express shipment terminates; all of which are in addition to any services rendered by the railway company in connection with the carrying of milk or cream.

(5) To point five of the opinion, Appellant cited: Coke Producers' Assn. v. B. & O. Ry. Co., 27 I. C. C. 125; In re Released Rates, 13 I. C. C. 550; Adams Express Co. v. Croninger, 226 U. S. 491; Atchison, etc. Ry. Co. v. Robinson, 233 U. S. 173; Evens & Howard Fire Brick Co. v. St. L. etc. Ry. Co., 25 I. C. C. 141. Evidence does not establish unreasonableness by comparison of the rates attacked: Mpls. Steel & Mach. Co. v. C., M. St. P. Ry. Co., 25 I. C. C. 193; Anadarko Cotton Oil Co. v. A. T. & S. F. Ry. Co., 20 I. C. C. 43; Sweeney Lines & Co. v. N. Y. etc. Ry. Co., 20 I. C. C. 600; Memphis Freight Bureau v. St. L. etc. Ry. Co., 21 I. C. C. 113; Dixie Dairymen v. Y. & M. V. Ry. Co., 27 I. C. C. 618. And submitted that: There is no such discrimination involved as will support the finding that the rates provided in 141-A are unreasonable, unjust, or excessive, by comparison.

(5) Respondent, and Board of Railway Commissioners cited: Laws 1911, Ch. 207, Secs. 6, 7, 21, 22. And submitted that: The evidence is all to the effect that the service rendered by the railroad company in transporting cream from any of the stations on the Isabel or Faith lines east to Minneapolis is substantially the same as the service rendered by the same company in transporting the same commodity from the same points of origin to Mitchell, South Dakota. That the evidence shows that, while the de-

fendant was exacting from the complainant the rates complained of in this case for shipments of cream from points on the defendant's railroad west of Mobridge to Mitchell, as provided in tariff 141-A, it was charging on shipments of cream from points on the defendant's line between Chamberlain and Rapid City, rates provided in tariff 1161-F.

(6) To point six of the opinion, Respondent, and Board of Railway Commissioners cited: Illinois Central Railway Co. v. Paducah Brewery Co., 163 S. W. 239; Chapter 262, Laws 1915; Laws 1911, Ch. 207, Secs. 13, 16, 17, 18; Marshall Oil Company of Iowa v. Chicago, Great Western Railway Company, Vol. 28, I. C. C. Report, 707.

(7) To point seven of the opinion, Appellant cited: International Salt Co. v. Penn R. R. Co., 20 I. C. C. 539; Penn. R. R. Co. v. International Coal Co., 230 U. S. 184; Parsons v. C. & N. W. Ry. Co., 167 U. S. 447; Janesville Clothing Co. v. C. & N. W., 26 I. C. C. 629; Meeker v. Lehigh Valley R. R. Co., 211 Fed. 285.

Respondent, and Board of Railway Commissioners submitted that: Complainant as a centeralizer of milk and cream established local agencies or receiving stations at the points upon the Isabel and Faith lines of railroad from which the shipments of cream involved in this suit were transported, upon the basis of the rate then being charged by the railroad company for carrying cream in baggage cars. That Tariff 141-A was improperly applied to the shipments in question.

(8) To point eight of the opinion, Appellant cited: Laws 1911, Ch. 207, Secs. 13, 16, 19; Report of the Interstate Commerce Commission, December 1, 1887; Tex. & Pac. Ry. Co. v. Abilene Cotton Oil Co., 204 U. S. 426; I. C. C. v. L. & N. R. Co., 227 U. S. 88; Penn. Refining Co. v. West N. Y. & P. R. R. Co., 208 U. S. 208; I. C. C. v. West N. Y. etc. Ry. Co., 82 Fed. 192; Detroit etc. R. Co. v. I. C. C., 74 Fed. 803, 21 C. C. A. 103; Seventh Amend., Const. of U. S.; Lehigh V. Ry. Co. v. Clark, 207 Fed. 717; Heck v. Railway Co., 1 I. C. Rep. 775; § 16, Federal Act; L. & N. Ry. Co. v. Garrett, 186 Fed. 176, affirmed in 231 U. S. 300.

Respondent, and Board of Railway Commissioners cited: Fidelity Lumber Company v. Great Northern Railway Company,

193 Fed. 924; Thompson Lumber Company v. Interstate Commerce Commission, 193 Fed. 682.

(9) To point nine of the opinion, Respondent, and Board of Railway Commissioners cited: Laws 1911, Ch. 207, Sec. 13; Cattle Raisers' Association of Texas, complainant, and the Chicago Live Stock Exchange, intervenor, v. C. B. & Q. Ry. Co., 10 I. C. C. Rep. 83.

(12) To point twelve of the opinion, Respondent, and Board of Railway Commissioners cited: Vol. 4, Ruling Case Law, p. 625, Sec. 97.

(13) To point thirteen of the opinion, Appellant cited: Detroit G. H. & M. R. Co. v. I. C. C., 21 C. C. A. 103, 74 Fed. 803; U. S. Const., Amend. 14; State Const., Art. 6, Sec. 4; Secs. 8, 9, Chap. 312, Laws 1913; Lehigh Valley R. Co. v. Clark, 207 Fed. 717; Heck & Petree v. Railroad Co., 1 Inter. Com. Com'n. R. 775.

GATES, J.  The respondent, Turner Creamery Company, was, during the periods mentioned, engaged in the manufacture of butter and ice cream, having its principal place of business at Mitchell, S. D.  In the late winter of 1912 or early in the spring of 1913 it established agencies or receiving stations for the purchase of milk and cream at Dupree, Firesteel, Isabel, Arrowhead, Timber Lake, Faith, Eagle Butte, Lantry, and Red Elm in this state.  These towns are upon the lines of the Chicago, Milwaukee & St. Paul Railway Company lying west of Mobridge, S. D., which is a station on the Missouri river.  Mitchell, S. D., is a station on said lines of railway east of the Missouri river.  Prior to January 1, 1913, the said lines of railway west of the Missouri river were a part of the Chicago, Milwaukee & Puget Sound Railway Company (hereinafter designated as the Puget Sound Company).  Mobridge was the meeting place of the two lines.

On July 1, 1909, the Puget Sound Company promulgated local and joint distance tariff P. C. L. 141A, applying locally between stations on its lines and on joint traffic between stations on its lines and stations on the lines of the Chicago, Milwaukee & St. Paul Railway Company (hereinafter called the St. Paul Company).  On May 10, 1911, the St. Paul Company promulgated tariff G. F. D. 1161F, applying on interstate traffic between all stations on its lines and on intrastate traffic between stations in

Illinois, Iowa, North and South Dakota, and Missouri. This tariff sheet recites:

"These rates originally established under order of Interstate Commerce Commission in cases 1162, 1292, and 1541, dated January 6, 1909."

On January 1, 1913, the St. Paul Company acquired the Puget Sound Company lines, and on that date refiled and adopted as its own all of the tariffs of the latter company, including 141A. Notwithstanding such adoption, the St. Paul Company began, and continued up to May 22, 1913, to charge and collect from plaintiff for the transportation of milk and cream from its receiving stations above named to Mitchell rates based upon its tariff 1161F. From May 22, 1913, to November 5, 1913, plaintiff was charged and paid rates based upon its tariff 141A. In August, 1913, the plaintiff filed its petition with the Board of Railroad Commissioners of South Dakota, alleging that the rates prescribed by tariff 141A were unreasonable, unjust, and excessive; that the rates prescribed by tariff 1161 F. were the reasonable rates, setting forth its shipments as above mentioned, and asking that the board require the railway company to apply the latter rate in the future, and that reparation for past shipments be awarded for the difference. On November 18, 1913, a hearing was had before said board upon said complaint, the answer of defendant, and the evidence introduced. In October, 1913, prior to said hearing, the St. Paul Company promulgated tariff 1161G, effective November 5, 1913, similar to tariff 1161F, except that by its terms it applied to the former Puget Sound lines in South Dakota. The following table shows the two rates from the stations named to Mitchell, on shipment of cream in ten-gallon cans:

|            | 141A | 1161F |
|------------|------|-------|
| Timber Lake | 64c. | 42c. |
| Firesteel  | 68   | 43    |
| Isabel     | 68   | 43    |
| Eagle Butte | 74  | 45    |
| Lantry     | 76   | 46    |
| Dupree     | 78·  | 46    |
| Red Elm    | 79   | 47    |
| Arrowhead  | 81   | 47    |
| Faith      | 83   | 48    |

About 90 per cent. of plaintiff's shipments were in ten-gallon cans.

On May 3, 1914, said board made its findings of fact, which embraced the matters above recited and others, and finding that the rates prescribed by tariff 1161F were reasonable, and the rates prescribed by 141A were unreasonable, unjust, and excessive; that the St. Paul Company collected from the plaintiff upon said shipments under tariff 141A the sum of $2,235.19; that, if the rates named in tariff 1161F had been applied, there would have been collected only $1,296.56, a difference of $938.63; and that plaintiff was entitled to reparation in said sum. Said board also found:

"After January 1, 1913, the Chicago, Milwaukee & Puget Sound Railway Company went out of existence, and the line of railway formerly operated by it from the time of the construction of the Pacific Coast extension up to January 1, 1913, became a part of the general system of the Chicago, Milwaukee & St. Paul Railway Company, and it is doubtful if there could be any 'joint traffic between stations on Chicago, Milwaukee & St. Paul Railway and Chicago, Milwaukee & Puget Sound Railway' after January 1, 1913. As there was not, after January 1, 1913, any line of railway known as the Chicago, Milwaukee & Puget Sound Railway, there could not be any joint traffic between stations on such line and the lines of the Chicago, Milwaukee & St. Paul Railway Company, and the baggage men of the Chicago, Milwaukee & St. Paul Railway Company up to May 21, 1913, properly applied on the shipments from the stations named in paragraph 4 of the complaint to Mitchell the only rates then in existence to apply on such traffic, which were those contained in the tariff known as 1161F. While it is true that the rates set down in G. F. D. 1161F are to be used in connection with table of distances of the Chicago, Milwaukee & St. Paul Railway Company No. G. F. D. 4000A, and those set down in tariff P. C. L. 141A are to be used in connection with table of distances of the Chicago, Milwaukee & Puget Sound Railway Company P. C. L. No. 30C, and this last-named distance table applies west of Mobridge, and the former distance table applies east of Mobridge, yet there is no joint traffic between points west of Mobridge and Mitchell, and it is all local traffic from the stations named in paragraph 4 of the complaint to Mitchell, and the rates named in G.

F. D. 1161F should have been applied on all traffic after January 1, 1913."

As conclusions of law the board decided:

"I. That it has no jurisdiction whatever to enter a money judgment in favor of the complainant and against the defendant for the recovery of the reparation which this board believes the plaintiff is entitled to in the sum of $938.63.

"II. That notwithstanding the fact that this board has no jurisdiction to enter a money judgment against the defendant, Chicago, Milwaukee & St. Paul Railway Company, it is its duty to enter an order in this proceeding requiring and commanding the defendant railway company to make reparation to the complainant for the sum of $938.63.

"III. That the rates named in the tariff 141A and exacted by the defendant from complainant from May 21, 1913, to November 5, 1913, are in violation of the provisions of section 6 of chapter 207 of the Session Laws of South Dakota for the year 1911."

Thereupon said board made its order requiring the defendant to make reparation to plaintiff in said sum. An appeal therefrom was duly perfected by the railway company to the circuit court of the county of Brown. A trial was had before the court without a jury upon the record made before the Board of Railroad Commissioners. Said court made its findings of fact and conclusions of law in all things upholding the decision of the board and entered judgment affirming its order of reparation. From such judgment the railway company has appealed to this court.

[1] Appellant first claims that the evidence is insufficient to show that the rates prescribed by tariff 141A are unreasonable, unjust, or excessive either in and of themselves or by comparison. No attempt was made by either party to demonstrate the reasonableness or unreasonableness of the rates per se along the approved lines laid down by the courts, viz., to ascertain the percentage of the net return from the business upon the value of the property used in the performance of the service. Mr. D. L. Kelley, traffic expert for the Board of Railroad Commissioners, testified that tariff 141A was unreasonable in so far as it applied to traffic between stations west of the Missouri river and stations

east of the Missouri river.   Mr. O. F. Waller, division freight
and passenger agent of defendant at Aberdeen, testified that the
rates specified in tariff 141A were reasonable.   All other evidence
offered by either party on the reasonableness of the rates was by
way of comparison.   It is proper to here call attention to a pro-
vision of our statute which authorizes the ascertainment of the
reasonableness of rates by comparison and a provision which
places the burden of proof upon the carrier to show the reason-
ableness of its rates when they are attacked in a proceeding be-
fore the Board of Railway Commissioners.   Section 22, c. 207,
Laws 1911, provides:

"*Section 22. Reasonable Rates, How Determined.*—Upon all
hearings the said board shall receive whatever evidence, statements
or agreements either party may offer or make pertinent to the
matter under investigation and the burden of proof shall be upon
the common carrier or carriers affected thereby, but the board
shall add to the showing made at such hearing whatever informa-
tion they may have, or can secure from any source whatsoever,
and the person or persons complaining shall be entitled to intro-
duce any published schedule of rates and fares of any common
carrier engaged in a similar branch of carriage, or evidence of
rates and fares actually charged by any common carrier, for sub-
stantially the same kind of service, whether in this state or any
other state, and the lowest rates and fares published or charged
by any railroad company for substantially the same kind of ser-
vice, whether in this state or any other state, shall, at the instance
of the person or persons complaining, be accepted as prima facie
evidence of a reasonable rate or fare for the service under investi-
gation.   *   *   *"

[2-5] As tending to sustain the burden of proof placed upon
it (although it claims the burden is on the plaintiff), the defend-
ant offered in evidence the South Dakota Railroad Commissioners'
merchandise tariff No. 26, prescribing express company rates on
intrastate traffic and its own excess baggage rates based upon
the passenger fares.   It may here be stated that a ten-gallon can
of cream weighs approximately 100 pounds, and that cream and
milk shipments by the defendant were carried in the baggage cars
on passenger trains.   The following table shows the rates pre-

scribed by tariff 141A and the said express rates upon a ten-gallon can of cream, and the excess baggage rates per 100 pounds from the stations named to Mitchell:

|  | 141A. | Express. | Excess Baggage per 100 lbs. |
|---|---|---|---|
| Timber Lake .............. | 64c. | 80c. | $1.00 |
| Firesteel ................. | 68 | 80 | 1.05 |
| Isabel .................... | 68 | 85 | 1.05 |
| Eagle Butte .............. | 74 | 1.00 | 1.15 |
| Lantry .................. | 76 | 1.00 | 1.20 |
| Dupree .................. | 78 | 1.00 | 1.25 |
| Red Elm ................ | 79 | 1.00 | 1.25 |
| Arrowhead .............. | 81 | 1.10 | 1.30 |
| Faith .................... | 83 | 1.10 | 1.30 |

Appellant further insists that the rates under tariff 141A are reasonable, because at the time that tariff was issued those rates were in force along the lines of the Northern Pacific Railway Company in the similar territory of North Dakota. It is true that those rates were then in force in said territory, but it is also true that those rates were adjudged unreasonable by the Interstate Commerce Commission, on January 13, 1911, in the case of Cobb v. N. P. Ry. Co. et al. (No. 3133), 20 Interst. Com. Com'n 100, and the rates prescribed by that commission in the Beatrice Creamery Case, hereinafter referred to, where ordered to be applied up to a distance of 510 miles from St. Paul. Reference is hereby by made to that opinion.

The defendant failed to sustain the burden cast upon it by the statute of showing the similarity of the service between shipments of cream under tariff 141A, on the one hand, and shipments of cream by express and the transportation of baggage, on the other hand; nor did it show that the liability of the carrier for loss or damage was the same in either case. It developed on cross-examination of Mr. Waller that the express company maintained a free "pick-up" service and a free delivery service at Aberdeen. If such free "pick-up" service existed at the initial stations, and such free delivery service existed at Mitchell, a comparison of the express rates with the rates prescribed by tariff 141A would scarcely be upon the same basis of service, inasmuch as under such tariff the shipper must deliver the milk cans upon

the railway platform, and the consignee must take them from the railway platform, and the tariff recites that while on the platform they are at the owner's risk.   On the other hand, plaintiff offered proof tending to show that the rates under tariff 1161F were the rates prescribed for the interstate shipment of milk and cream by the Interstate Commerce Commission January 6, 1909, in the following cases:  No. 1162, Beatrice Creamery Co. v. Illinois Central R. Co.; No. 1292, Fairmont Creamery Co. v. Ill. Cent. R. Co.; No. 1541, Blue Valley Creamery Co. v. Mich. Cent. R. Co.— the consolidated opinion in which cases appears in 15 Interst. Com. Com'n R. 109, and that such rates applied to that part of the United States between Indiana and Colorado.   Reference is hereby made to that opinion.   The plaintiff also offered evidence tending to show the unreasonableness of the rates under tariff 141A by a comparison with the defendant's local rates either way from Mobridge.   The following table shows the rates per ten-gallon can from the stations named to Mitchell under tariff 141A and under the locals to Mobridge, plus the local from Mobridge to Mitchell, and the excess of the former over a combination of the locals:

|  | 141A. | Combination of Locals. | Excess. |
|---|---|---|---|
| Timber Lake ................... | 64c. | 60c | 4c. |
| Firesteel ...................... | 68 | 61 | 7 |
| Isabel ........................ | 68 | 62 | 6 |
| Eagle Butte ................... | 74 | 67 | 7 |
| Lantry ........................ | 76 | 69 | 7 |
| Dupree ....................... | 78 | 71 | 7 |
| Red Elm ...................... | 79 | 73 | 6 |
| Arrowhead .................... | 81 | 74 | 7 |
| Faith ......................... | 83 | 76 | 7 |

Surely a through rate that exceeds the combination of the locals cannot be said to be a reasonable rate.   Plaintiff further showed that the rates in effect on defendant's lines between Mitchell and Rapid City via Chamberlain were those prescribed by tariff 1161F.   While defendant's evidence vaguely tended to show circumstances which might justify a higher rate on the Puget Sound lines west of the Missouri river than on the lines of defendant east of the river, no attempt was made by defendant to

show any circumstances which would justify higher rates on the Puget Sound lines than on the line between Chamberlain and Rapid City. Plaintiff offered further evidence showing the difference between rates on cream from the stations west of the Missouri river to the Twin Cities and rates to Mitchell under tariff 141A. The following table shows the rates per ten-gallon can and the mileage:

|  | To Minneapolis. | | To Mitchell. | |
|---|---|---|---|---|
|  | Miles | Rate. | Miles. | Rate. |
| Timber Lake | 440 | 57c. | 270 | 64c. |
| Firesteel | 450 | 58 | 282 | 68 |
| Isabel | 458 | 58 | 290 | 68 |
| Eagle Butte | 486 | 60 | 317 | 74 |
| Lantry | 496 | 61 | 327 | 76 |
| Dupree | 505 | 61 | 337 | 78 |
| Red Elm | 514 | 62 | 345 | 79 |
| Arrowhead | 520 | 62 | 352 | 81 |
| Faith | 528 | 63 | 361 | 83 |

These shipments are carried on the same lines and presumably on the same trains as far as Aberdeen. The above rates to Minneapolis up to the distance of 505 miles are 4 cents higher than the rates prescribed in the Cobb Case, supra. Even if the above Minneapolis rates are reasonable, why should it be considered reasonable for the carrier to charge 20 cents per can more from Faith to Mitchell than from Faith to Minneapolis, when the latter distance exceeds the former by 167 miles? The defendant has attempted no explanation. From a thorough study and careful consideration of the evidence, we are of the opinion that not only did the defendant fail to sustain the burden upon it of proving that tariff rates 141A were reasonable, but also that the plaintiff affirmatively proved that the rates prescribed by tariff 1161F were reasonable, and that the rates charged plaintiff under tariff 141A were unreasonable, unjust, and excessive.

[6] Appellant next claims that, even if plaintiff is entitled to reparation, the evidence is insufficient to justify reparation in excess of $290.90, viz., the difference between the amount charged and sum of the locals. Our determination that the rates were unreasonable, unjust, and excessive, and that the rates prescribed by

tariff 1161F were the reasonable rates that should have been charged, disposes of this claim.

[7] Appellant next contends that the evidence is insufficient to show that respondent has been damaged. It is urged that it is not shown that plaintiff paid more for cream, including cost of carriage, under tariff 141A than it paid for cream originating at other points, nor that plaintiff was embarrassed in its business by reason of that tariff, nor that it was unable to procure all the cream it required at the regular price paid by it at the markets for such commodity. A number of authorities are cited which clearly hold that a shipper is not entitled to reparation until he has shown damage, with which principle we entirely agree. But we think the plaintiff made a prima facie showing of damage. It showed that it established these forwarding stations at the points named upon the strength of the rates then actually charged; that it paid for the cream at the stations, and that it paid the shipment charges; that it paid the rates then charged; that when tariff 141A was applied, it paid those rates; and that by reason thereof it paid to defendant.$938.63 more than it would have paid if tariff 1161F had been applied. The argument of appellant implies that the price to the farmer must have been reduced because of the increase in the rate applied, and that therefore the plaintiff was not damaged. Of course, if the plaintiff paid to the farmer a correspondingly lower price for cream from the time that tariff 141A was applied, and if that tariff did not otherwise affect plaintiff, it was not damaged. But there is no evidence as to the amounts paid the farmer either before or after the application of that tariff. As above stated, we think the plaintiff made a prima facie showing of damage in the amount specified.

[8] Appellant further claims that, under the finding of the Board of Railroad Commissioners, approved by the trial court, to the effect that tariff 141A was inapplicable because there could be no joint rate between defendant and itself, the plaintiff had an adequate remedy at law for the recovery of the overcharge, and therefore that the board had no jurisdiction. As supporting that claim, appellant cited a number of wholly inapplicable authorities; for instance, Penn. Ry. Co. .v International Coal Co., 230 U. S. 184, 33 Sup. Ct. 893, 57 L. Ed. 1446, Ann. Cas. 1915A, 315. That case decides that previous action by the Interstate Commerce Com-

mission is not a prerequisite to an action at law to recover damages for discrimination. Inasmuch as chapter 207, Laws 1911, especially authorized the present proceeding before the board, and authorized it to make an order requiring reparation "for injury found to have been done," we are of the opinion that there is no merit in this claim of appellant.

[9] It is further contended that the Board of Railroad Commissioners has no jurisdiction to award a reparation in any case; that plaintiff has an adequate remedy at law. Section 13, c. 207, Laws 1911, provides that the complaining person may invoke his remedy by application to the board or by an action in court, but he may not pursue both remedies at the same time. The succeeding sections of that chapter define the procedure before, and powers of, the board expressly providing that it may order reparation. See, also, sections 4, 7, and 12 of said chapter. This point is apparently not seriously urged, except in connection with the denial of the right of trial by jury hereinafter referred to. The mere fact that the board has no power to enforce its orders cannot be successfully urged as a denial of the power to make the order, when the statute expressly gives it that power.

[10] Appellant further contends that, under the provisions of amendment 14 of the United States Constitution, and sections 2 and 6 of article 6 of the state Constitution, the enforcement of the order appealed from would deprive it of its property without due process of law. Appellant contends that due process of law has been violated: (a) Because section 8, c. 312, Laws 1913, makes the order of the board absolute unless appealed from; (b) because upon an appeal to the circuit court the trial must be had solely upon the record made before the board; (c) because upon appeal to the circuit court no trial by jury is provided for.

(a) It is true that the statutes makes the order of the board absolute unless an appeal is taken; not, however, in the sense that it is a final money judgment, but it is absolute in such case in the same sense that it is absolute when it has been finally affirmed after all methods for its review have been exhausted or the time therefor has elapsed. In view of the fact that the statute provides for the enforcement of the order in another action, we do not discover, nor has there been called to our attention, any reason for the assertion that due process of law has been violated by the

provisions of the statute making the order absolute unless appealed from.

The next point, (b), viz., in relation to trial upon appeal solely on the record made before the board, we will hereinafter consider.

[11] But the point (c), most strongly urged, is that defendant has been deprived of its constitutional right of trial by jury. It might be a sufficient reply to this claim to say that this case came on for trial on appeal before the circuit court without a jury, with the apparent consent of the parties and of the trial court. The railway company acquiesced without objection in a trial by the to raise this constitutional question. C. C. § 2415. It has not placed itself in the position to raise it. Nevertheless we will later herein consider the proposition.

[12-13] Appellant further contends that due process of law is violated: (d) Because in the action in the circuit court to enforce the order of the board the trial must be had solely upon the record made before the board; and (e) because in such action no trial by jury is provided. Considering points (b) and (d) together, we may observe that it is true that neither upon appeal from the order nor in an action to enforce the order may any evidence be received except that which was introduced before the Board of Railroad Commissioners. It would seem to us that these requirements of the statute are reasonable and fair to both parties. It is right and proper that the parties should make the full presentation of their case before the board in the first instance. In Cincinnati, N. O. & T. P. R. Co. v. I. C. C., 162 U. S. 184, 16 Sup. Ct. 700, 40 L. Ed. 935, the Supreme Court of the United States said:

"We think this a proper occasion to express disapproval of such a method of procedure on the part of the railroad companies as should lead them to withhold the larger part of their evidence from the commission, and first adduce it in the circuit court. The commission is an administrative board, and the courts are only to be resorted to when the commission prefers to enforce the provisions of the statute by a direct proceeding in the court, or when the orders of the commission have been disregarded. The theory of the act evidently is, as shown by the provision that the findings of the commission shall be regarded as prima facie evidence, that

the facts of the case are to be disclosed before the commission."

In State ex rel. O. R. & N. Co. v. Fairchild, 224 U. S. 510, 32 Sup. Ct. 535, 56 L. Ed. 863, the same court, in considering a Washington statute, said:

"Having been given full opportunity to be heard on the issues made by the complaint and answer, and as to the reasonableness of the proposed order, and having adopted the statutory method of review, this company cannot complain. It had the right to offer all competent testimony before the commission, which, in view of the form of proceedings authorized by the statute, acted in this respect somewhat like a master in chancery who has been required to take testimony and report his findings of fact and conclusions of law. The court would test its correctness by the evidence submitted to the master. Nor would there be any impairment of the right to a judicial review, because additional testimony could not be submitted to the chancellor."

In 4 R. C. L. p. 625, § 97, we find the following:

"Where it is provided that in a review of the finding of a commission by the court the court shall confine itself to evidence adduced before the commission, this does not constitute a denial of due process, inasmuch as the court is not bound by the commission's findings, and the party affected has the right, on the original hearing, to introduce evidence as to all material points. Moreover, notwithstanding the fact that additional evidence cannot be introduced before the court, the case may be remanded to the commission for the purpose of taking further testimony, and where this procedure is provided with the further direction that the court determine upon the evidence the reasonableness and lawfulness of the order made by the commission before enforcement, there is no such denial of the right of trial by jury as will violate the federal or state Constitutions."

It is provided by section 7, c. 312, Laws 1913, that:

"The said circuit court in its determination of said cause may affirm, reverse or modify such order or determination of said board, or substitute therefor any order which in its opinion the board should have made at the time of entering the order or determination from which the appeal is taken, or remand the cause to the board of railroad commissioners with directions to make such order."

Practically the same power is given to the Supreme Court upon appeal from the decision of the circuit court. Ample provision is therefore preserved to correct any errors that might have occurred in the preceding stages of the case. We unhesitatingly conclude that the due process of law guaranteed by article 6, § 2, of our Constitution and by the fourteenth amendment to the Constitution of the United States has not been violated or abridged by the requirements of the statute complained of.

[14] Finally we consider the question as to the right of trial by jury raised by points (c) and (e). It is true that no right of trial by jury is provided by statute upon an appeal to the circuit court from the order of the board. It will be observed, however, that this order is not a judgment for the payment of money, and does not purport to be. It is only made prima facie evidence as to the facts found. Section 17, c. 207, Laws 1911. If the carrier does not obey the order, it must be enforced by action in the circuit court. This court has held that the denial of the right of jury trial cannot be successfully asserted if upon appeal a jury trial may be had. In Twp. of Dell Rapids v. Irving, 7 S. D. 310, 64 N. W. 149, 29 L. R. A. 861, this court held, in a condemnation proceeding, that the right of trial by jury was preserved where a provision was made therefor upon appeal. In the present case no provision is made for a trial by jury upon appeal from the order of the board, but it would seem that by analogy the principle laid down in the Dell Rapids Case would apply if in some stage of the proceeding the carrier is given the right of trial by jury. If, in the action to enforce the order of the board, a trial by jury may be had, we are entirely clear that the right of trial by jury provided by Const. art. 6, § 6, is preserved. But appellant insists that by the terms of section 19, c. 207, Laws 1911, all orders of the board are to be enforced by action in the circuit court without a jury, whether such orders require the payment of money or otherwise. Such was the statute at the time of the decision by the board and the decision by the trial court in this case. If the carrier had not appealed to this court, and proceedings had been been begun to enforce the order for reparation, then the question of the right of trial by jury might have become an important one. But by chapter 262, Laws 1915, the Legislature amended section 19, c. 207, Laws 1911, by providing for a jury trial in cases where

the order of the board requires the payment of money. If upon the filing of the remittitur in this case the carrier refuses to obey the order, it may then have its coveted trial by jury. Its constitutional right therefore has been preserved. 4 R. C. L. 624, § 97.

Finding no error in the record, the judgment of the trial court is affirmed.