RICHARDS, et al, Respondents, v. SMITH, Superintendent of Banks, et al, Appellants.

(228 N. W. 182.)

(File No. 6533. Opinion filed December 10, 1929.)

*Roy E. Willy,* Special Counsel, Banking Department, of Sioux Falls, *T. B. Thorson,* Special Counsel. Banking Department, of Pierre, and *Chas. P. Warren, T. H. Null,* and *Max Royhl,* all of Huron, for Appellants.

*Gardner & Churchill,* of Huron, and *Charles S. Ego,* of Lisbon, N. D., for Respondents.

MISER, C. Plaintiffs, respondents herein, are receivers of the Farmers' & Merchants' Bank of Cogswell, N. D. They bring

this action against the superintendent of banks and the examiners in charge of the now insolvent Farmers' & Merchants' Bank of Iroquois, S. D., and the now insolvent Bank of Brookings. The words "Cogswell," "Iroquois," and "Brookings" will be used herein to designate these banks.

In the original complaint, respondent, the ancillary receiver, sought to recover the possession of certain promissory notes which he claimed defendants unlawfully detained. After a partial trial of the case, respondents paid to defendants, appellants herein, $8,842.26, and defendants surrendered to respondents the notes for the possession of which suit had been brought. It was then stipulated that respondents should, and they did, deposit in escrow in National Bank of Huron the further sum of $5,944.42, which was the balance claimed by appellant to be due to it from respondents. It was further stipulated that respondents should promptly assert their claim to this fund, so that this claim should be determined by the court at the next term. The stipulation concluded;

"This receipt [for the $8842.26 paid and the $5944.42 depoosited in escrow] and the escrow agreement shall not in any manner prejudice either party to this action, or change or alter the issues in said case, and said litigation shall proceed as if said collateral shown by Schedule AA [the notes sued for] were still in the possession of the defendants, except that credit is to be allowed for the amount of $8,842.26 received by defendants."

This stipulation was made on March 12, 1926. On May 3, 1926, counsel for respondents served an amended and supplemental complaint on counsel for appellants and filed it with the clerk of courts. In this complaint, in which the receiver of Cogswell Bank, appointed by the North Dakota court, was joined as plaintiff, respondents claim that Brookings and Iroquois, acting through Flitte, the controlling officer of both banks, fraudulently induced Cogswell, through Carlson, its cashier, to execute and deliver to Brookings notes for $5,000 more than it otherwise would have executed, that is for $21,816.03, at a time when, except for the fraud, it should have executed notes for only $16,816.03. The sum of $5,944.42 mentioned in the escrow agreement represents the $5,000 difference, with interest.

Much confusion was caused at the final trial of this action in September, 1926, by the uncertainty as to the state of the pleadings.

The amended complaint was served and filed without leave of court long after the time limited by section 2376, Rev. Code 1919, though approximately four months prior to the final trial. It was served by being left with the person in charge of the office of defendants' counsel. After considerable evidence had been introduced, the trial court ruled that the amended complaint should stand, and that defendants might file a new answer, which they did. This ruling of the trial court is assigned as error. Whether it was error can only be determined after a review of the evidence.

In support of the amended complaint, proof was submitted as follows: Flitte was the president of Brookings and vice president of Iroquois, and owned 20 per cent of the stock of Security Investment & Mortgage Company. Eighty per cent of the stock of the mortgage company was owned by stockholders of Brookings. Lees was vice president of Brookings and a heavy stockholder in the mortgage company. Carlson was cashier of Cogswell. Cogswell kept an account with and held a portion of its reserve with Brookings. On October 29, 1923, the account showed a balance of only $244.-02; yet Cogswell drew on it a draft of $4,000.00. Cogswell, at that time, had an overdraft with its only other correspondent bank far in excess of its cash. When this draft was presented at Brookings, Flitte went to Cogswell and arranged to have the $4,000 draft honored. He also procured from Cogswell a loan of $5,000 to Lees, the then insolvent vice president of Brookings. The plan was as follows: Cogswell already owed Brookings $11,816.03 on its own notes. Without making the Lees loan, it needed $5,000 to honor the draft and another charge against the account. If it made the Lees loan, it needed $10,000. Brookings credited Cogswell's account $10,000 and took new notes for $21,816.03. Lees then executed to Cogswell his note for $5,000 and delivered it to Flitte. Flitte charged it against Cogswell's account and used the corresponding credit to Lees to satisfy part of Lees' debt to Brookings. In making this loan, Cogswell relied on Flitte's assurance that Lees' note was good. Flitte then knew, or had reason to know, that it was worthless.

At this time, the account of Lees with Brookings had been overdrawn in sums ranging from a few dollars to about $500 during more than half the time of the previous five months. His overdraft on November 2, 1923, was $158.88. His wife's account

was also overdrawn. He owed personal bills about town of about $400. He owed Brookings a past-due note of $986. He also owed Brookings a note of $4,500 and Iroquois a note of $4,200. The mortgage company, of which both Flitte and he were heavy stockholders, had an overdraft in Brookings of $3,800. In 1920, when Lees, who had been in the real estate business, returned to Brookings as vice president, he owed that bank almost $13,000 which he could not pay. About November 2, 1923, he deeded to Brookings an equity in 800 acres of land, without receiving any consideration from the bank. He owed $33,000 on 480 acres of land in Hamlin county. He owned 25 shares in Brookings, which three months later closed its doors. Before the trial of the action, he had been discharged in bankruptcy. The assistant to the examiner in charge of Brookings, part of whose work was the collection of collateral paper, testified that he never tried to collect anything on Lees' note. When, however, Carlson, being asked by Flitte to loan Lees' $5,000 out of the $10,000 advanced to Cogswell by Brookings, inquired of Flitte whether Lees' note was good, Flitte replied that it was good. On this Carlson relied. The evidence was amply sufficient to warrant the jury in concluding that Flitte's statement was fraudulently made. Section 816, Rev. Code 1919; Williams v. Harris, 4 S. D. 22, 54 N. W. 926, 46 Am. St. Rep. 753; Cole v. Reiley, 35 S. D. 30, 33, 150 N. W. 299, 300. There was ample evidence, therefore, to warrant the jury in finding for respondent on the question of liability for the fraud. In fact, from the evidence, the jury might well have concluded that Flitte took advantage of the necessities of a dying bank to secure for his own banks $5,000 of its valuable assets in return for the worthless note of a close business associate, an officer in the favored Brookings bank.

█ Was it error to permit the amendment of the complaint? This point is ably argued by counsel for both appellant and respondent. To decide this point would extend an opinion which, on account of the necessary recital of the facts, is already too long. If it was error, it was not prejudicial. After the escrow agreement was entered into, the only dispute between the receivers of the North Dakota bank and the superintendent and examiners in charge of the South Dakota banks was whether Cogswell was obligated to pay the last $5,000 of its notes for $21,816.03. This was represented by the $5,944.42 deposited in escrow. Plaintiffs, respondents

herein, by that escrow agreement, got possession of the collateral, the right to which they sought to have determined in their original complaint. If, as respondents contend, they could have proven under the original pleadings what they have proven under the amended pleadings, then appellants have not been injured by the amendment. If, as appellants contend, respondents could not have proven under the original pleadings what they did prove on the trial, a refusal by the trial court to permit the amendment would have resulted merely in the loss of a term, contrary to their stipulations of March 12, 1923. Certainly respondents' amended complaint and appellants' amended answer thereto stated the controversy between the litigants, as it existed at the time of the trial, better than the original pleadings did. There was no surprise. Whether or not that portion of the stipulation hereinbefore quoted estopped respondents from amending their complaint, and whether or not appellants could retain, without objection, the amended complaint for the four months prior to trial, or whether the burden lay with respondents to obtain leave to amend, the fact is that appellants were not surprised. Their opening statement discloses that they considered the possibility that the trial court would try the case on the amended pleadings. They asked for no continuance. All the witnesses and parties to the deal except Lees were present in person. The deposition of Lees shows that his testimony was taken with a view to trial under the amended pleadings. The case was ably and vigorously tried to a jury under the pleadings and instructions, which squarely presented the actual controversy between the litigants as it existed after the payments made by respondents and the delivery by appellants of the collateral and after the escrow agreement was entered into. It was not reversible error for the trial court to permit trial to proceed upon the amended complaint, because respondents were not thereby misled to their prejudice in maintaining their defense upon the merits. Sections 2373, 2377, Rev. Code 1919; Mo. R. T. Co. v. M. & St. L. Ry., 34 S. D. 1, 11, 147 N. W. 82; Threshing Machine Co. v. Eichinger, 15 S. D. 530, 91 N. W. 82; Wolfinger v. Thomas, 22 S. D. 57, 61, 115 N. W. 100, 133 Am. St. Rep. 900; Union Investment Co. v. Schonebaun, 42 S. D. 350, 353, 175 N. W. 357; Lehman v. Smith, 40 S. D. 556, 168 N. W. 857.

Appellants contend that respondents have no authority to

prosecute this action. It was to respondents that appellants delivered the collateral, the possession of which was sought in the original complaint. It was from respondents that appellants received the $8,842.26 which, if the judgment appealed from is valid, paid appellants' notes in full. It was respondents who deposited in escrow the disputed balance of $5,944.42, which the judgment appealed from restored to them. The escrow agreement and the receipt for the collateral returned were signed by both respondents. Having recognized the authority and capacity of respondents, when the $5,944.42 was deposited in escrow to abide the decision of the court, appellants are now estopped, when decision has gone against them, to question that capacity. Greeley v. Provident Savings Bank, 103 Mo. 212, 15 S. W. 429, 431; Bigelow, Estop. (6th Ed.) 748; Skinner v. Lucas, 68 Mich. 424, 36 N. W. 203; 21 C. J. 1237, 1238. Assuming, though not deciding, that the language of the escrow agreement hereinbefore quoted waives that estoppel, it does not appear how appellants are prejudiced by a judgment which requires them to pay no money but merely restores to respondents the money respondents deposited in escrow.

Appellants object that, though the amended complaint asked for an accounting and equitable relief, the case was tried to a jury, and that they were entitled to have the findings of fact, conclusions of law, and judgment of a court. During the trial appellants made no objection to its trial by a jury, nor did they propose any findings nor request that findings be made. Having acquiesced in the trial to a jury, they will not now be heard to complain after verdict has been rendered against them. Section 47, Rev. Code 1919; 35 C. J. 224; State ex rel Duncan v. Dean, 123 Or. 537, 262 P. 936, 937; Turner Creamery Co. v. Ry. Co.; 36 S. D. 310, 327, 154 N. W. 819, 824. Furthermore, without objection by appellants, the jury was instructed as to the form of verdict it might return. This was not excepted to. It became the law of the case, and appellant is not now in position to complain. State Bank v. Braden, 39 S. D. 53, 162 N. W. 929.

The other errors assigned, not herein discussed, have all been considered. We find nothing therein to warrant reversal.

The judgment and order appealed from are affirmed.

SHERWOOD, P. J., and POLLEY, CAMPBELL, BURCH, and BROWN, JJ., concur.